LEIGHTON SUPPLY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5744. Promulgated May 26, 1927.

INVENTORIES.—A merchandise inventory taken as of December 31, 1920, and priced according to manufacturers' printed price list of June and July, 1920, is not an inventory at cost or market whichever is lower as of December 31, 1920. The petitioner's revision of such inventory based upon actual knowledge of market prices as of December 31, 1920, was properly used as a basis for computing gross merchandise gain for the year 1920.

*W. W. Ross, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

This proceeding is for the redetermination of a deficiency in the amount of $6,239.04 for the calendar year 1920, proposed to be assessed by the respondent in his letter dated May 26, 1925,

The petitioner alleges that the respondent erred in not accepting the petitioner's revised inventory of $510,596.25 upon the basis of cost or market whichever is lower as at December 31, 1920, instead of the original inventory of $529,604.85.

FINDINGS OF FACT.

The Leighton Supply Co. was incorporated in 1909 and since that time has been engaged at Fort Dodge, Iowa, in the business of wholesaling plumbing, heating, mill, and well supplies. Since the organization of the petitioner, E. I. Leighton has been secretary-treasurer and general manager of the entire business. He either made or had direct supervision over all purchases and sales.

It has always been the custom of the petitioner to take inventory during the latter part of December of each year. The actual counting and listing of all merchandise in stock was completed as soon as possible after December 31 and then the clerks, under Leighton's supervision, applied the cost or market, whichever was lower, and the necessary extensions to arrive at the inventory value of the various articles. In pricing the articles, the clerks used the printed price lists of manufacturers, less discounts allowed jobbers, and the computing was done by comptometer operators. Inventories were usually completed during the latter part of January or the first part of February, after which the necessary entries were made upon the books as of December 31 of the year for which the inventory was made.

For the year 1920, the taxable year here in question, the petitioner followed its regular custom of taking inventory. In pricing articles on hand on December 31, 1920, the clerks used the printed list of prices and discounts which had prevailed during June and July, 1920, for that was their only source of such information. The inventory amounting to $529,604.85 was completed shortly after the first of February, 1921, and the said amount was entered upon the books for the purpose of making a preliminary report to the stockholders although Leighton knew at the time that the inventory values were too high. Leighton's instructions to his assistants were to complete the inventory upon the available information as to the values and afterwards he would make such changes as were necessary, and in accordance with his own knowledge of the prevailing market conditions and values as of December 31, 1920.

From the middle of July, 1919, to approximately the middle of July, 1920, the market was quite stable and market values remained about the same. In July or August of 1920, there began a serious slump in the market, caused by the banks calling loans, and that

condition continued through the first months of 1921. Toward the close of 1920 market conditions became chaotic, jobbers and retail dealers had excessively large inventories (as did the petitioner) which could not be disposed of, and manufacturers had to cut their prices to make sales. However, the manufacturers did not revise their printed price lists as of June, 1920, for they could not foretell how far prices would drop nor how long the slump would last, but instead offered their merchandise for sale at greater discounts.

The petitioner usually purchased merchandise in carload lots on which manufacturers usually allowed larger discounts from list prices than were allowed on purchase of smaller quantities. During December, 1920, many representatives of various manufacturers came to Leighton's office at the petitioner's place of business and quoted sale prices on various articles handled by petitioner and endeavored to secure orders from petitioner. Because of these quotations of prices by various manufacturers, Leighton had knowledge of the current market of December, 1920, and it was because of that knowledge that he desired to revise the inventory after all the mass of detail work had been completed by his clerks. The true market values were not used in making the original inventory because Leighton desired to secure more information as to market conditions and values as of December 31, 1920.

Leighton, upon receiving the original inventory from his clerks, immediately made the necessary revisions or corrections as to a portion of the inventory in accordance with his definite information as to market values on December 31, 1920. Those corrections reduced the inventory as follows:

| Quantity and item | Original inventory, July price lists. | Revised inventory, Dec. 31 market |
|---|---|---|
| 6,226 feet belting | } $7,696.00 | $5,252.53 |
| 6 endless belts | | |
| 1,361 closet bowls | } 29,293.38 | 23,622.78 |
| 476 closet seats | | |
| 954 tanks | | |
| 78 tank covers | | |
| 130,630 cast iron fittings, bushings, tees, ells, crosses, unions, plugs, etc | 18,448.87 | 16,785.90 |
| 166 V. & K. electric pumps and systems | 15,604.39 | 14,676.37 |
| 29,032 pounds lead pipe | } 3,315.18 | 2,938.54 |
| 1,713 lead bends, traps, etc | | |
| 82,194 square feet radiation equipment | 28,776.72 | 25,802.88 |
| 235 pneumatic pressure tanks | 12,248.64 | 7,441.06 |
| Totals | 115,383.18 96,520.06 | 96,520.06 |
| Difference | 18,863.12 | |
| Original inventory | 529,604.85 | |
| Difference | 18,863.12 | |
| Revised inventory | 510,741.73 | |

Leighton knew at that time that other items in the inventory not reduced were priced higher than the prevailing market values as of December 31, 1920, but as to those items Leighton did not have definite information or quotations and he considered that it would consume too much time to secure such information covering the large number of items included in the unrevised inventory and on many items of which manufacturers did not put out printed price lists. Based upon the corrected inventory the petitioner sustained a loss during 1921 of approximately $118,000.

The revised inventory was entered upon the books as of December 31, 1920, and in the petitioner's income and profits-tax return for 1920 the inventory was reported as $510,596.25. A revenue agent examined the petitioner's books and reported the inventory for 1920 as $529,604.85, which was adopted by the respondent.

OPINION.

TRUSSELL: The sole issue in this proceeding is whether the original or the revised inventory is the proper one to adopt in computing the taxable income of the petitioner for the year 1920. The Commissioner adopted the original inventory and takes the position that it was based on market values as at December 31, 1920, and that the revised inventory is based on market values as of February 15, 1921, after a further decline in the market. The petitioner claims that the revised inventory is based on market values as of December 31, 1920.

In the findings of fact we have set out a schedule showing the reduction in the inventory in dollars and cents and have not attempted to set out the schedule contained in the record showing the original and revised discounts used by the petitioner for they are too voluminous, as they vary to some extent as to the various and numerous articles.

The petitioner in its income-tax return for 1920 reported its inventory at $510,596.25 and in its petition claims that the revised inventory of that amount is the proper one to adopt in determining its taxable income. However, the record before us establishes a revised inventory in the amount of $510,741.73.

Leighton's uncontradicted testimony as to market conditions and values as at December 31, 1920, is convincing. However, to further establish the petitioner's contention there has been submitted the testimony of several disinterested and well qualified witnesses, who sold plumbing and other supplies to the petitioner.

One witness, who since 1910 has been the sales manager of a textile belting company of Chicago, Ill., testified that his concern had to revise its discounts on belting shortly after October, 1920,

because of the demoralized condition of the market and that the values used by the petitioner in its revised inventory on belting were the fair market values as of December 31, 1920. This witness also testified that prices continued to drop during the first months of 1921 requiring further revisions in discounts.

Another witness, an officer in a company which for many years has manufactured lavatory fixtures, testified that such fixtures were sold during the latter part of 1920 at most any price the manufacturers could get. He further testified that the petitioner in its revised inventory as to such fixtures used prices on which his company was offering to sell such articles.

Another witness, the sales manager, of a malleable iron company for 25 years, testified that by December 31, 1920, the market was in a most chaotic condition. This witness gave a statement showing the discount rates as of December 31, 1920, on iron fittings as used by the petitioner in its revised inventory, were the equivalent of his companies' discount rates at that time.

Another witness, general sales manager of the V. & K. Co., testified that petitioner in its original inventory used the V. & K. Co.'s list prices and discounts, but that due to market conditions market prices were 15 per cent less on December 31, 1920, which was a lower value than that used by petitioner in its revised inventory.

The secretary and treasurer of a company manufacturing lead products testified that many contractors who had been dealing with the Government had large stocks of lead goods on hand and were compelled to dispose of such stock at any price in the fall of 1920. He testified that the values on lead goods as used by petitioner in its revised inventory represented the fair market value on December 31, 1920.

The sales manager, for the past 20 years, of a company manufacturing boilers and radiators, testified that the company's list prices did not represent the true market values on December 31, 1920, but that the values used by petitioner in its revised inventory on radiation products did represent such values.

The sales manager of a company which sells pneumatic pressure tanks testified that the company's list prices did not represent market values on December 31, 1920, because of the rapid decline in prices at that time, that discount terms were made across the desk by salesmen and that the values used in petitioner's revised inventory on pneumatic tanks were the correct market values on December 31, 1920.

We are convinced by the testimony and record in this proceeding that the petitioner was conservative in revising its inventory for 1920, and that as to that portion of the inventory which was re-

vised the petitioner used the fair market values as of December 31, 1920, as quoted to it by the representatives of the manufacturers it had been dealing with.

The revised inventory in the amount of $510,741.73 is the proper one to adopt in computing the petitioner's taxable income for the year 1920. See *Appeal of California Canneries Co.*, 2 B. T. A. 109, and the *Appeal of Summit Wholesale Grocery Co.*, 1 B. T. A. 1040.

> *Order of redetermination will be made upon 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*